ELLA M. BANKER v. PEOPLE'S ICE COMPANY.[1]

January 14, 1896.

No. 9688—(236).

**Refusal of New Trial—Evidence.**

>*Held*, that the evidence in this case was not so manifestly and palpably against the verdict in plaintiff's favor as to justify the reversal of an order of the court below denying defendant's motion for a new trial.

Appeal by defendant from an order of the district court for Ramsey county, C. D. Kerr, J., denying a motion for a new trial, after a verdict in favor of plaintiff for $983. Affirmed.

*McLaughlin & Morrison*, for appellant.

*E. M. Card*, for respondent.

COLLINS, J. This was an action to recover for personal injuries claimed to have been received by plaintiff through the negligence of one of defendant's servants while driving a pair of horses attached to an open supply wagon at the intersection of Tenth and Robert streets, in the city of St. Paul. Plaintiff had a verdict, and the appeal is from an order denying defendant's motion for a new trial.

The principal point made by defendant's counsel is that the evidence was so manifestly and palpably against the verdict that a rank injustice will be done if it be allowed to stand. In fact, it is asserted that it would be an utter impossibility for the accident to have occurred in the manner testified to by plaintiff and one of her witnesses who saw it. The plaintiff, in an open buggy, with a single horse, was driving west on Tenth street, while two of defendant's wagons, each being drawn by a pair of horses on a walk, were proceeding north on Robert. When plaintiff came to Tenth, she stopped her horse, according to her version of the affair, close to the crosswalk on the east side of Robert, that these teams, one following close behind the other, might pass. As the last team came north to the south line of Tenth street, it suddenly turned as if to go onto that street. The horses and forward part of the wagon came so

[1] Reported in 65 N. W. 657.

close to plaintiff's horse as to cause it to throw up its head. The shafts of the buggy scraped on some part of the wagon. The right-hand shaft was caught in one of the hind wheels, was thus broken, and this caused the horse to run away.

That in some way the shaft upon the right or north side of plaintiff's buggy was broken by a wheel of the wagon in question, that the horse ran, and that plaintiff was injured in the runaway, is conceded; the contention at the trial being over the manner in which the shaft got caught or was broken. An eyewitness, a young lady who saw the affair from the window of a house near by, and who was called by defendant, testified that plaintiff did not stop at the crossing, but drove across Robert, so closely behind the wagon that the buggy shaft was run into the wheel, instead of the wheel being brought against the shaft. It appeared from the evidence that the shaft curved out at the end; that, at the point of intersection with Robert, Tenth street is practically 40 feet wide from curb to curb; that defendant's wagon was so built that the forward wheel could not turn under the box; and that it was 24 feet from the heads of the horses to the rear end of the wagon box. It was also testified by plaintiff that her horse was stopped in the middle of Tenth street, and that defendant's wagon was on the upper curve, going back onto Robert, when the wheel caught the shaft.

From these facts defendant's counsel argue that it is demonstrated to a certainty that the collision could not have occurred through any negligent or careless act of the driver, nor could it have occurred in the way described by plaintiff; that the defendant's horses and wagon could not have turned from Robert into Tenth to the distance necessary to collide with plaintiff's horse or the shafts of the buggy, and then to have turned back onto Robert, because of the narrowness of Tenth street; or, even if the horses had carelessly been driven upon the latter street, and one of the horses or the forward wheel of the wagon had gone as close as plaintiff stated, that the rear wheel, describing as it must have been when turning back the inner or lesser of the curved tracks made on the ground by the front and rear wheels of the wagon, must, of necessity, have been some inches further from the shaft than the front, and for this reason could not have caught it. Added to this is the fact that the shaft curved outwardly, and away from the approaching wheel, the nat-

ural or expected tendency being for the end of the shaft to slip off from anything it might catch upon; and the further fact, as stated by plaintiff, that her horse stood quite still except as he threw up his head, from the time the defendant's horses were unnecessarily close until the shaft was caught.

In theory, at least, counsel have demonstrated quite successfully that the collision could not have occurred precisely as plaintiff claims it did, but we are not prepared to say with absolute certainty that the shaft could not have been caught and broken substantially in the manner indicated. A great deal would depend upon just where plaintiff's horse stood, and the angle at which defendant's wagon approached, the space required for the wagon to turn in, of which there was no proof, the relative position of the two vehicles, whether plaintiff's horse stood still when the wagon passed, or was slightly restless, and moved his position just at the time the rear wheel was in close proximity to and dangerously near the shaft, and suddenly and with considerable force brought it against the wheel.

It is true that plaintiff testified that her horse stood in the middle of Tenth street, about at right angles with Robert, that he did not move to any noticeable extent, and that the shaft was caught while the wagon was on the upper curve; but it ought not to be expected, under the circumstances, that the plaintiff would notice every detail of the occurrence, or that she could testify with exactness as to the precise manner in which the accident happened. That it did happen is admitted; and, to return a verdict for plaintiff, the jury were not obliged to find that it was exactly as she related; nor, to sustain the order appealed from, are we compelled to hold that, because it could not have happened precisely as testified to, it could not happen in substantially that way, and through the negligence of defendant's servant. In theory it would seem quite impossible; but, as indicating the unreliability of theories, we again refer to the claim of counsel that with the team and wagon measuring 24 feet from end to end, the wagon being built so that the forward wheel could not be turned under the box, it was impossible for the team and wagon to have gone out onto Tenth street a sufficient distance to reach plaintiff's horse or buggy shaft, and then have returned to Robert, because of the narrowness of the street first mentioned. Now, as a matter of fact, one of plaintiff's witnesses, who

was walking on Tenth street, but knew nothing of the affair until he heard the noise made by the breaking of the shaft, testified that he immediately saw the wagon and horses, and, from their position on Robert, supposed they had just turned into that street from Tenth. Theories frequently have to surrender to well-authenticated facts.

We are not to be understood as holding that jurors can disregard or brush away the evidence produced upon a trial, and, independently of it, figure out a scheme on which to render a verdict; but in this case the testimony warranted the jury in concluding that, by turning in upon Tenth street while plaintiff had halted, defendant's wagon wheel was negligently brought in contact with the shaft of plaintiff's buggy, and the shaft thereby broken, although it was improbable for it to have been done just as told by plaintiff. We think the court below would have been fully justified in ordering a new trial, but, as against the verdict and its order denying the motion, we cannot reverse the latter. This disposes of both assignments of error.

Order affirmed.